Elizabeth MOYNIHAN

v.

Harris Y. YETRA et al.

No. 93–614–Appeal.

Supreme Court of Rhode Island.

Oct. 25, 1994.

John A. Macfadyen, III and Richard Gonnella, Providence, for plaintiff.

Patricia Buckley and C. Russell Bengtson (Carroll, Kelly & Murphy), Providence, for defendant.

## OPINION

### PER CURIAM.

This matter came before the Supreme Court pursuant to an order directing all parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After reviewing the memoranda submitted by the parties and after hearing their counsel in oral argument, this court concludes that cause has not been shown. The issues raised will be decided at this time.

The defendant, Harris Y. Yetra, has appealed a second time in this case. In the first appeal the court sustained defendant's appeal and we vacated the trial justice's order granting a new trial to plaintiff, Elizabeth Moynihan. We remanded the case for entry of judgment consistent with the verdict rendered by the jury. *Moynihan v. Yetra,* 625 A.2d 221 (R.I.1993).

On remand the trial justice, in response to a motion by plaintiff's counsel and contrary to our specific direction, entered a judgment for plaintiff in an amount not reflective of the jurors' specific answers to interrogatories. These interrogatories had been given to them for their use in reporting the jury verdict. The wording of these interrogatories was agreed to by the parties.

By way of background, we offer the following summary. The plaintiff was involved in a motor-vehicle collision involving three vehicles, her own and two others. She entered into a joint tort-feasor's release with one of the operators and went to trial against the other. The jury apportioned negligence among the three operators as 80 percent for the settling joint tort-feasor, 10 percent for plaintiff, and the remaining 10 percent for defendant. It then assessed the total damage suffered by plaintiff as $70,000 in response to the interrogatory reading "What is the total amount of damages suffered by Elizabeth Moynihan?" The trial justice himself described that interrogatory as "clear in its simplicity." We agree.

In disposing of the first appeal this court stated:

"It appears to the court that the jury reasonably apportioned the negligence of the various parties, that the award of $70,000 in total damages does not shock the conscience. Therefore, the granting of the plaintiff's motion for a new trial was unwarranted."

On remand plaintiff submitted to the trial justice identical affidavits from four of the six jurors. They had been obtained by and were notarized by plaintiff's counsel a year after the verdict was rendered. The affidavit stated that the answer of $70,000 to the question of what Moynihan's total damages were was actually intended by them to represent only defendant's 10 percent share, not plaintiff's total damages.

Rule 606(b) of the Rhode Island Rules of Evidence states:

"Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement [occurring] during the course of the jury's

deliberations or to the effect of anything upon his or her or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous pre-judicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may the juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes."

Prior to the adoption of the evidence rules this court addressed the problem covered in Rule 606(b) in *Roberts v. Kettelle*, 116 R.I. 283, 356 A.2d 207 (1976). We stated, in part:

"Even though the decisions of many courts support the view that where a jury's error is latent and not apparent from the face of the verdict it may be proper to receive affidavits from individual jurors to ascertain the true verdict * * * we are of the opinion that a contrary rule is dictated by considerations of sound public policy. This court has unwaveringly adhered to the position that jurors' affidavits when offered to prove what any of the jurors may have done either before or during their deliberations cannot be used to impeach their verdict. * * * The rule is solidly grounded in the premise that admission of such affidavits undermines the stability of jury verdicts and corrodes the purity of trials by jury. * * * We perceive no reason why this rule should not apply with equal force to a situation where the alleged error is that the jury erroneously reported its true verdict. The public interest requires that litigation be terminated and to that end the jury verdict should possess a conclusiveness that will preserve the stability of the jury trial as an instrument for doing substantial justice." *Id.* at 299–300, 356 A.2d at 217.

The *Kettelle* case was identical in principle to the case before us.

The plaintiff argued to the trial justice and to this court that the affidavits were not used to impeach the verdict but only to explain it. That explanation is an equivocation. The affidavits were used to impeach. The verdict rendered was for 10 percent of $70,000 plus statutory interest. The judgment entered for a different amount was clear error and must be vacated. The use of affidavits clearly violated Rule 606(b).

For these reasons the defendant's appeal is again sustained, and the judgment appealed from is vacated. The papers of the case are remanded to the Superior Court. The clerk of the Superior Court is directed to enter judgment for the plaintiff in accordance with the jury verdict as was previously ordered in our earlier remand in this case.